PROVIDED TO TAYLOR C.I. FOR
MAILING ON

1-10-17

DATE (MAILROOM-ANNEX) OFFICER INT.

| United States District Court | District: Middle | |
|---|---|---|
| Name (under which you were convicted):<br><br>James Alphonso Greene | Docket or Case No.: not yet assigned<br><br>8:17-CV-108-T-17JSS | |
| Place of Confinement<br><br>TAYLOR CORRECTIONAL INSTITUTION ANNEX<br>8629 HAMPTON SPRINGS ROAD<br>PERRY, FLORIDA 32348 | Prisoner No.: R60557<br><br>2017 JAN 13 PM 1:38 | |
| Petitioner (include the name under which you were convicted)<br><br>James alphonso Greene | Respondent (authorized person having custody of petitioner)<br><br>v.    JULIE L. JONES | |
| The Attorney General of the State of FLORIDA, Pamela Jo Bondi | | |

## PETITION

1.  (a) Names and location of court that entered the judgment of conviction you are challenging: Circuit Court, Sixth Judicial Circuit, Pinellas County, Florida.

    (b) Criminal docket or case number (if you know): CRC0823782CFANO; CRC0915140CFANO; CRC11250061CFANO

2.  (a) Date of the judgment of conviction (if you know): January 4, 2013

    (b) Date of sentencing: January 4, 2013

3.  Length of sentence: 30 years prison

4.  In this case, were you convicted on more than one count or of more than one crime?  [X] Yes  [ ] No

5.  Identify all crimes of which you were convicted and sentenced in this case: Cts.: 1 -05 robbery w/firearm 30 years; Count 6 delinquent poss. of firearm 15 years; count 7 carrying a concealed firearm 5 years; count 8 batt. On law enforcement officer 5 years.

6.  (a) What was your plea? (Check one)

    [X]    (1)    Not guilty         [ ]    (3)    Nolo contendere (no contest)

    [ ]    (2)    Guilty             [ ]    (4)    Insanity plea

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? Not guilty on all charges

1



(c) If you went to trial. what kind of trial did you have? (check one)

[ ]  Jury        [X]    Judge only (VOP evidentiary hearing before trial)

7.  Did you testify at a pretrial hearing. trial. or a post-trial hearing?

[ ]  Yes        [X]    No

8.  Did you appeal from the judgment of conviction?

[X]    Yes      [ ]    No

9.  If you did appeal, answer the following:

(a) Name of court: Florida Second District Court of Appeal

(b) Docket or case number (if you know): 2D13-509

(c) Result: Per Curiam Affirmed

(d) Date of result (if you know): December 4, 2013

(e) Citation to the case (if you know): Greene v. State, 129 So.3d. 368 (Fla. 2nd DCA 2013

(f) Grounds raised: The trial court erred in revoking the appellant's probation because the evidence was insufficient to prove by a preponderance of the evidence that the Appellant had been in actual or constructive possession of cocaine.

(g) Did you seek further review by a higher state court?           [ ]  Yes      [X]  No

If yes, answer the following:

(1)  Name of court: N/A

(2)  Docket or case number (if you know): N/A

(3)  Result: N/A

(4)  Date of Result (if you know): N/A

(5)  Citation to the case (if you know): N/A

(6)  Grounds raised: N/A

(h) Did you file a petition for certiorari in the United States Supreme Court?      [ ]  Yes  [X]  No

If yes, answer the following:

(1)  Docket or case number (if you know): N/A

(2)  Result: N/A

2

(3)  Date of Result (if you know): N/A

(4)  Citation to the case (if you know): N/A

10.    Other than the direct appeals listed above. have you previously filed any other petitions. applications. or motions concerning this judgment of conviction in any state court?       [X]  Yes       [ ]  No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of Court: Circuit Court Sixth Judicial Circuit, Pinellas County, FL

(2) Docket or case number (if you know): 2D15-1586

(3) Date of filing (if you know): July 24, 2015 (Amended August 18, 2014)

(4) Nature of the proceeding: 3.850 Motion / Amended motion for Post Conviction Relief

(5) Grounds raised: See grounds one-seven attachment "A"

(6)  Did you receive a hearing where evidence was given on your petition, application. or motion?

[ ]  Yes       [X]  No

(7)  Result: Denied

(8)  Date of result (if you know): March 5, 2015

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Florida Second District Court of Appeal

(2) Docket or case number (if you know: 2D15-2082

(3) Date of filing (if you know): January 23, 2015 (Amended: March 23, 2015)

(4) Nature of the proceeding: State Habeas Corpus – Ineffective Assistance of Appellate Counsel

(5) Grounds raised: Issue 1: Did the petitioner's appellate counsel's representation constitute ineffective assistance of counsel by failing to raise the trial court's per se reversible error alleged herein.

(6)  Did you receive a hearing where evidence was given on your petition. application, or motion?

[ ]  Yes       [ X]  No

(7)  Result: Per Curiam affirmed

3

(8) Date of result (if you know): N/A

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:  N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6)    Did you receive a hearing where evidence was given on your petition, application, or motion?

[ ]   Yes   [ ]   No

(7)    Result: N/A

(8)    Date of result (if you know): N/A

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:         [ ]     Yes    [ X ]    No

(2) Second petition:       [ ]     Yes    [ X ]    No

(3) Third petition:         [ ]     Yes    [ ]      No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

On appeal for the denial of postconviction relief 3.850 and petitioner's claims raised in his state Habeas Corpus was per curiam affirmed without opinions in the Fla. Second District Court of Appeal.

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

4

offense reflect the information that was relayed to him by narcotics corporal Sciarrino, through contacts that were made between them, before and after the narcotics operation took place.

At petitioner's VOP hearing, Biening testified falsely that after a phone call was completed at the Pinellas County Sheriff's office  regarding the narcotics sting, he went to the Suburban Lodge motel and set up a  position inside the motel's parking lot where the narcotics operation place. Biening falsely testified that while being present at the motel he was able to observe petitioner's vehicle arrive in the parking lot of the Suburban Lodge motel. Biening falsely stated that he was able to observe petitioner exit the front passenger seat of the vehicle, go to room 301, knock on the door and after receiving no answer, petitioner returned back to the passenger seat of the vehicle. Petitioner was the only person Biening observed get in and out of the vehicle at the motel.

Contrarily, Biening failed to mention the material facts of his presence at the Suburban Lodge motel in his police report. This constituted Biening's prior statement as a inconsistent statement which, failed to mention a material circumstance that would have been natural to mention in his prior statement. Also, Biening's police report alleged circumstances that were materially different from his VOP testimony, which too is constituted as inconsistent. In Biening's police report, Biening alleged that during the first 'contact'[1] between he and narcotics corporal Sciarrino, he was informed that a confidential informant was arranging a narcotics transaction to occur at the Suburban Lodge Motel with a potential suspect in his attempted homicide investigation. After Biening became aware of the said information provided to him by Sciarrino, Biening stated that he provided Sciarrino with a description of the suspect sought in the attempted homicide investigation.

Apparently the matters stated above occurred before an arrest was made in the narcotics offense, Biening further alleged that corporal Sciarrino re-contacted him at a later time and informed him that four black males were arrested at the motel and that one of the subjects, ultimately identified as the petitioner, matched the description he provided Sciarrino during their first contact with each other. It is apparent that these matters occurred after the arrest was made in the narcotics operation.

The inconsistencies described in Biening's VOP testimony and his prior statement in his police report demonstrate that, in his testimony, due to his presence and involvement in the narcotics operation, he was able to give an eye-witness account of what occurred during the narcotics operation at the motel. However, due to his 'lack of personal knowledge' of the events that occurred in the narcotics operation, in his police report, Biening provided information that he learned from corporal Sciarrino regarding the narcotics offense.

Due to there being no evidence which conclusively refuted that Biening's prior statements in his police report was materially different from his VOP testimony, the state trial court's determination that Biening's statements were not inconsistent, was an unreasonable determination of the facts.

Furthermore, In finding that Detective Biening's testimony of his involvement in the narcotics sting was not false, the state trial court found that Petitioner's showing of narcotics sergeant Wentz and corporal Sciarrino's police reports that proved that Biening was not present inside the vehicle with the confidential informant during the narcotics operation, did not contradict Biening's testimony of Biening being present at the scene of the narcotics operation.

However, Wents and Sciarrino's police reports were not provided for the purpose of contradicting Biening's presence at the scene of the narcotics offense. Petitioner provided Wentz and Sciarrino's report for the sole purpose of contradicting detective Biening's testimony of being 'present with the confidential informant' during the time she called

---

[1] Contact – by phone, computer or some sort of electronic device.

petitioner and instructed petitioner to meet with her at room 301. This fact also contradicts Biening's testimony of being the person who instructed Jones to 'parrot' these instructions into the phone.

Detective Biening testified falsely that he was present with Shunette Jones and instructed Jones to call petitioner and direct petitioner to meet with her at room 301 of the motel. Biening testified falsely that he heard Jones 'Parrot' those instructions into the phone she was using and that he observed petitioner's behavior match those instructions during the narcotics operation.

Contrarily, narcotics sergeant Wentz and corporal Sciarrino's police reports alleged consistent facts that stated that Sciarrino was the officer who's involvement were  providing Jones with the instructions during the phone calls in the narcotics operation. Most importantly, Wentz and Sciarrino's police reports alleged that Jones was inside their vehicle at the motel when Sciarrino instructed her to make the phone call for her to ask petitioner to go to room 301. Narcotics sergeant Wentz, corporal Sciarrino, Lieutenant Veira and Shunette Jones were the occupants of their vehicle when Jones placed such phone call.[2]

The facts described in Wentz and Sciarrino's reports contradict Biening's testimony of Being present with Jones and providing Jones with the instructions during the phone call, that Biening alleged match petitioner's behavior during the narcotics operation. The state and the state trial court did not dispute the facts that Wentz and Sciarrino's reports proves that Biening was not inside the vehicle with the CI during the narcotics operation. However, the state trial court misapplied the facts by determining that Wentz and Sciarrino's reports failed to contradict Biening's testimony of his presence at the scene.

The state trial court's failure to refute petitioner's allegation that Wentz and Sciarrino's reports contradict Biening's testimony of being present with Jones when she called petitioner and asked him to go to room 301, and Biening's testimony of providing Jones with the instructions to have petitioner meet her at room 301, was an unreasonable determination of the facts.

Moreover, detective Biening's trial testimony revealed more precisely that Biening was not present or involved in the narcotics operation. At petitioner's trial, Biening testified that he was present at the Pinellas county sheriff office with Jones when she made the first phone call to petitioner to order the narcotics. Biening revealed that Jones was then 'turned over'[3] to narcotics to help them in the narcotics investigation. The narcotics team took Jones and 'went on their way'[4] Biening revealed that he let the narcotics team handle the narcotics operation because that is what they do all day. Once Biening was 'made aware'[5] of petitioner's arrest, petitioner was brought to him.

---

[2] Narcotics sergeant Wentz and corporal Sciarrino's reports indicated that a phone call was placed at the sheriff's office. However, they explained that the phone call with the specific instruction for petitioner to go to room 301 was made while they were at the Suburban Lodge Motel. Also, detective Biening did not precisely state in his false testimony that he was inside of the vehicle with Shunette Jones during the narcotics operation. However, Biening's testimony of being present with Jones and providing her with the instruction to direct petitioner to room 301 indicated that Biening placed himself inside the vehicle with Jones at the motel.

[3] Turned over-handed over, given to, released from ones custody to another.

[4] Went on their way – There was some sort of separation made, a departure from or a division occurred.

[5] Made aware – something brought to ones attention (consistent with his prior statement in his police report, Biening alleged that narcotics corporal Sciarrino contacted him and informed him that petitioner was arrested at the motel).

At one point, the state attempted to implicate Biening's presence at the Suburban Lodge Motel with Jones which Biening quickly corrected by clarifying that he was at the sheriff's office with Jones when she called petitioner's phone. At not time did Biening testify that he was present at the Suburban Lodge motel during the narcotics operation or that he provided Jones with any instructions during the phone calls in the matters.

Additionally, the Pinellas County sheriff office standard operating procedures for writing police reports states:

1.   REPORT WRITING, REVIEW AND OBTAINING A CASE NUMBER

   III PROCEDURE:                              (page 2 of 7)
   b. "Reports should be written in a manner which will aid members in giving official testimony". All pertinent dates, times, "locations" and descriptions should be included. (emphasis added)


2.   REPORT WRITING. General Order 8-5           (page 2 of 5)

   PROCEDURE:

   8-5.1

D. It shall be the responsibility of the member to who a report number is assigned to correctly title the report, insure the proper clearance is made and the report 'contains all necessary information." (Emphasis added).

The state trial court's failure to address the evidence shown in detective Biening's testimony and in the Pinellas county sheriff office's standard operating procedure for writing police reports before making its final determinations of facts was unreasonable.

During the postconviction proceeding, petitioner provided Biening's trial testimony in support of his argument in his 'objection to the state's first response which the state trial court accepted as a reply to the state's response. Petitioner argued that Biening's trial testimony, which is inconsistent with his VOP testimony, contradicted Biening's VOP testimony of his presence and involvement in the narcotics operation. Petitioner further provided the Pinellas county sheriff office standard operating procedures for writing police reports in his 'running objection to the state's response' which the state trial court accepted as a reply to the state's second response. Petitioner argued that narcotics sergeant Wentz, corporal Sciarrino and detective Biening's omissions of failing to mention the material circumstances of Biening's presence and involvement in their police reports, was proof of Biening's testimony being false. Their failures to mention the material facts of Biening's presence and involvement in the narcotics operation, was against the requirements of their (SOP).

The fact that petitioner provided such evidence as exhibits that was relevant in establishing his Giglio claim, the state trial court should have acted reasonably in considering the evidence before making its final determination of petitioner's claim.

There is more than enough proof to believe that detective Biening's testimony was false. There's five separate documents that contradict one part or another of detective Biening's VOP testimony, two which were Biening's own statements given on two separate occasions. The two statements that Biening gave which contradicts his VOP testimony, is consistent with each other (detective Biening's police report and trial testimony).

SECOND PRONG OF GIGLIO

Furthermore, if this court finds that detective Biening's testimony at petitioner's VOP hearing was false, this court should further find that petitioner's claim sufficiently satisfies the second requirement of Giglio standard. It has been established in Guzman v. Secretary dept. of Corr, 663 F.3d. 1336 (11th Cir. 2011) (that knowledge of a police officer's false testimony is imputed to the prosecutor who tries a case). Therefore, in appliance with the law, the state's presentation of detective Biening's false testimony was knowingly herein.

### THIRD PRONG OF GIGLIO

In judging petitioner's Giglio claim in light of the materiality standard, this court in it's view should question the state's intent in presenting Biening's false testimony as evidence in establishing petitioner's guilt at the VOP hearing. The fact that the state's burden was to prove its case by a preponderance of the evidence, the weight of Biening's damaging testimony was in the state's favor of establishing its case by the "greater weight of the evidence."

It is a fact that sergeant Wentz's testimony reflected the material circumstances of Biening's testimony of what occurred during the narcotics operation. However, where the circumstances of the state's case was entirely circumstantial regarding petitioner's guilt of the underlying offense, the weight of sergeant Wentz's testimony alone would have had to outweigh the defense arguments of the state's evidence being insufficient to prove petitioner's guilt.

The defense argued: [petitioner's emphasis added]

> "Ms. Pardo: "Judge, there's no testimony in front of the court indicating that the person on the other side of the telephone was Mr. Greene. There's nobody here to testify to that. The confidential informant is not here for her to say, 'I was speaking to who I know is James Greene, and that's James Greene right there.'"
>
> Secondly, there is no cocaine found on his person whatsoever (referring to the fact that Biening and Wentz testified that they never witnessed petitioner to be in possession of the cocaine during the narcotics operation).
>
> No attempted sale is made (referring to the fact that petitioner never met with Shunette Jones on the night in question to even prove what his intentions were for meeting her).
>
> No transaction takes place (referring to the fact that petitioner was led to an empty hotel room and returned back to the vehicle where he was arrested at before he was able to leave the motel).
>
> No admissions are made (referring to the fact that neither petitioner or any of the other three occupants of their vehicle admitted to having knowledge of the cocaine's presence in the vehicle).
>
> There is nothing to connect him physically to any of the cocaine (referring to the fact that there was no audio recordings that established that petitioner agreed to meet with Jones to sell her cocaine. There was no video recordings that established that petitioner actually possessed cocaine at any time on the night in question).

9

The defense further argued the fact that the cocaine discovered inside the vehicle may have not been in the same locations when to occupants were inside of the vehicle. The cocaine may have been repositioned at some point during the arrest and take down of the vehicle.

In concluding, defense counsel argued that based upon the evidence there wasn't enough to prove petitioner's knowledge or possession of the cocaine.

Therefore, the state's use of Biening's false testimony, in support of Wentz's testimony gave the state "heavier legs" to stand on in overcoming the defense arguments of its insufficiency of the evidence.

Giglio's materiality standard states:

"A statement is material under Giglio if there is any reasonable likelihood that the false testimony could have affected the judgment."

In this instance, detective Biening's false testimony of what he observed occur in the narcotics operation was highly incriminating to petitioner's guilt in the narcotics offense.

Although sergeant Wentz's testimony extended a little further than Biening's by describing the circumstances of the take down and arrest of petitioner, the key most important fact in the matters was that petitioner was the only subject that exited the vehicle "to sell Jones the crack cocaine" at the motel.

These facts were alleged in detective Biening's false testimony. At the VOP hearing, the state trial court's findings included the circumstances described in Biening's false testimony alleging the events surrounding the narcotics operation. The fact that the state presented Biening's false testimony as weight for establishing its case, made it more of a difficult position for petitioner to overcome the weight of the state;s theory of guilt in the narcotics offense.

Thus, the trial court's determination of the fact of Biening's testimony not being material to the judgment rendered, was an unreasonable determination of the facts under the circumstances.


(b) If you did not exhaust your state remedies on Ground One, explain why: N/A

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    [ ]     Yes     [X]     No

(2) If you did not raise this issue in your direct appeal, explain why: Claim was not cognizable on Appellate review

d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    [ X]     Yes     [ ]     No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: 3.850 postconviction motion

10

Name and location of the court where the motion or petition was filed: Circuit Court, Sixth Judicial Circuit, Pinellas County, Florida

Docket or case Number (if you know): CRC0823782CFANO; CRC0915140CFANO; CRC11250061CFANO

Date of the court's decision: March 5, 2015

Result (attach a copy of the court's opinion or order, if available): Denied, see attachment "B"

(3) Did you receive a hearing on your motion or petition?                                      [ ] Yes [X] No

(4) Did you appeal from the denial of your motion or petition?                            [X] Yes [ ] No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal      [X] Yes [ ] No

(6) If your answer to Question (d)(4) s "Yes," state:

Name and location of the court where the appeal was filed: Florida Second District Court of Appeal

Docket or case number (if you know): 2D15-1586

Date of court's decision: August 12, 2016

Result (attach a copy of the court's opinion or order, if available): per curiam affirmed see attachment "C"

(7)  If your answer to Question (d)(4) or Question (d)(5 is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your remedies on Ground One: None

## GROUND TWO:

(a)Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

PETITIONER WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE 6TH AMENDMENT OF THE UNITED STATES CONSTITUTION DUE TO HIS COUNSEL'S FAILURE TO IMPEACH STATE'S WITNESS. STRICKLAND V WASHINGTON, 466 u.s. 668 (1984).

SUPPORTING FACTS:

In ground three of petitioner's postconviction motion, petitioner alleged that his counsel was ineffective for failing to impeach detective Biening's VOP testimony with his prior inconsistent statements in his police report. As noted above in ground one, detective Biening's police report and his testimony given at petitioner's VOP hearing, alleged inconsistent circumstances of his presence and involvement in the narcotics operation. Biening's police report indicate that he was not present or involved in the narcotics operation while his VOP testimony states otherwise.

The state trial court in its 'final order denying petitioner's motion for postconviction relief' made unreasonable determinations of the facts, in finding that petitioner's claim failed to establish both the deficiency prong and the prejudice prong of Strickland's standard.

11

FIRST:

In concluding that petitioner failed to establish the deficiency prong, the state trial court unreasonably found the state's argument correct that detective Biening's VOP testimony was not inconsistent with his prior statement in his police report.

However, Detective Biening's police report and his VOP testimony constituted three different type of inconsistent statements that were: 1). Detective Biening 'failed to mention in his prior statement the material circumstances alleged in his testimony that would have been natural to mention in his prior statement"; 2). Biening's testimony alleged circumstances that were materially different  from his prior inconsistent statement in his police report and; 3).Biening's prior inconsistent statement in his police report directly contradicted his testimony at the VOP hearing.

At petitioner's VOP hearing, detective Biening testified that he was present at the Suburban Lodge Motel during the narcotics operation. Biening's omission of failing to mention his presence at the scene of the narcotics operation, inside of his prior statement of his police report, constituted Biening's police report as a 'prior inconsistent statement that did not mention a material circumstance that would have been natural to mention in his police report.'

Detective Biening's testimony of his presence at the scene of the narcotics operation was material because Biening's presence gave the state the leverage of presenting its case in light of Biening being a credible witness to what occurred during the underlining narcotics offense.


NEXT:

Detective Biening's statement in his police report demonstrated that 'he lacked personal knowledge' of the events that occurred during the narcotics operation, where Biening's statement was a reflection of the information he received from narcotics corporal Sciarrino, before and after the narcotics operation.

On the other hand, detective Biening's VOP testimony demonstrated that he had 'personal knowledge' of the events that occurred during the narcotics operation, where Biening gave detailed testimony of what he observed and was involved in during the narcotics operation.

Detective Biening's prior inconsistent statement in his police report was materially different from his VOP testimony regarding his personal knowledge of the events that occurred during the narcotics operation. As stated in Hoggins v. State, 718 So.2d. 761, 771 (Fla 1998)(to be inconsistent a prior statement must either directly contradict or be materially different  from the expected testimony at trial).

In the first paragraph of Biening's police report, Biening alleged that he was contacted by narcotics corporal Sciarrino. Corporal Sciarrino informed him that a confidential informant (Shunette Jones) arranged a narcotics transaction to take place at the Suburban Lodge Motel with a suspect of Biening's attempted homicide investigation. After learning such information from Sciarrino, Biening provided Sciarrino with a description of the suspect in the attempted homicide investigation. It appears that these matters took place before the arrest of petitioner.

In the second paragraph of Biening's police report, Biening alleged that he was recontacted by Sciarrino who had informed him that four black males were arrested at the motel and that one, ultimately identified as petitioner, matched the description he provided Sciarrino with during their initial contact. Biening then asked Sciarrino to have the subjects transported to the Pinellas County Sheriff's office for interviews.

In the following paragraphs of his police report, Biening alleged what occurred at the sheriff's office during his attempts in interviewing the subjects arrested.

However, In Biening's VOP testimony, he testified that Shunette Jones agreed to assist 'him' in making contact with the subject she believed shot Michelle Jordan (victim of the attempted homicide) by setting the subject up to a crack cocaine transaction.

Biening received a phone number from Jones of the subject who she believed shot Jordan. Biening instructed Jones to call the subject and ask him to meet with her to deliver her $50.00 worth of crack cocaine to the Suburban Lodge Motel. This was for the purpose of identifying the subject, getting a photo pack of him to Jordan, and to interview the subject concerning the shooting. Biening instructed Jones to direct the subject to room 301 of the motel, which is what Biening heard Jones 'parrot' into the phone.

Biening testified that the first phone call was made at the Pinellas County Sheriff's office (indicating that subsequent calls were made). Upon the completion of the call, Biening left the sheriff's office and set up at the Suburban Lodge Motel, where the other narcotics detectives and Shunette Jones was present. Biening was able to observe what went on in the parking lot of the motel. Biening observed the vehicle occupying petitioner arrive. No one was inside room 301. Biening observed petitioner exit the vehicle, go to room 301, knock on the door, after receiving no answer, petitioner returned back to the passenger seat of the vehicle.

At that time, Jones was able to identify petitioner as the person she introduced to Michelle Jordan. The behavior of petitioner matched the instructions Biening instructed Jones to provide into the phone. Petitioner was the person Biening observed get in and out of the vehicle at the motel.

Detective Biening's statement in his police report was materially different from his VOP testimony, where in Biening's police report his statement of his knowledge of the narcotics offense reflected information that was relayed to him by another person, before and after the narcotics operation.

On the other hand, Biening's testimony was a detailed account of what he observed and did during the narcotics operation. The circumstances in his police report which demonstrated that Biening 'lacked personal knowledge', was an indication that he was not present or involved in the narcotics operation.[6] The circumstance in his testimony which demonstrated that he 'had personal knowledge' alleged that Biening was present and involved in the underlying narcotics operation.

THIRD:

During detective Biening's VOP testimony, Biening made an in-court identification of petitioner which supported his testimony of petitioner being the person 'he observed' get in and out of the vehicle during the narcotics operation.

On the other hand, in Biening's prior inconsistent statement of his police report, he alleged that first he provided Sciarrieno with a description of the subject in the attempted homicide investigation, which Sciarrino re-contacted him at a later time and informed him that petitioner matched that description.

Biening's VOP testimony demonstrated that he was able to personally confirm that petitioner's identity matched the description of the suspect's in the attempted homicide. On the other hand however, Biening's prior inconsistent

---

[6] The facts of Biening's police report were consistent with his testimony that he gave at petitioner's trial, June 11, 2013, in demonstrating that Biening was not present or involved in the narcotics operation.

statement demonstrated that corporal Sciarrino confirmed the identity match of petitioner and then, relayed that information over to Biening.

The inconsistencies alleged in these statements demonstrated a direct contradiction.

Detective Biening's in court identity of petitioner being the subject he observed commit a narcotics operation was material to the state's use of Biening's testimony. The fact that Biening's VOP testimony alleged circumstances that demonstrated that he had personal knowledge of petitioner being the subject to commit the narcotics offense, gave the state the ability of presenting Biening as a credible witness that described the circumstances of the underlying narcotics offense. Had counsel confronted Biening with his prior inconsistent statement of how he became aware of the identity match of petitioner and the attempted homicide suspect's description, Biening's VOP testimony of his presence, involvement and ability to observe petitioner during the narcotics operation would have been under attack.

The circumstances alleged in Biening's prior inconsistent statement indicated that he was not present at the motel and that he lacked personal knowledge of what occurred during the narcotics operation.

**DEFICIENCY**

Counsel's omission of failing to attack Biening's testimony using his prior inconsistent statements in his police report was an act of deficiency.

**PREJUDICE**

The state trial court's determination of the fact that petitioner could not establish prejudice in his claim was unreasonable because, prejudice ensued from petitioner's counsel's omission that resulted in petitioner suffering convictions obtained through the state's use of Biening's false testimony, which violated petitioner the rights to the 6th and 14th amendments of the United States constitution.

There is a reasonable probability that the outcome of the VOP hearing would have been different had counsel made the impeachment attacks described in this claim.

As noted in ground one of this petition, detective Biening was one of two witnesses that the state used to establish its case of what occurred in the narcotics operation by the preponderance of the evidence. It is a fact that sergeant Wentz's testimony reflected the circumstances of Biening's testimony concerning what occurred during the narcotics operation. However, the weight of Wentz's testimony alone may not have been sufficient enough to overcome the state's burden of proof at the VOP hearing.

In its scope, this court should thoroughly analyze the state's intention in using detective Biening's false testimony. It is reasonable to believe that the state's use of detective Biening's testimony was to make the weight of its theory of what occurred during the narcotics operation, more heavier than using only the weight of sergeant Wentz's testimony to meet its burden of establishing its case.

Had the state trial court weighed only sergeant Wentz's testimony against the defense's arguments of the state insufficient evidence, the defense would have had more standing of attacking the weight of the state's circumstantial case, which would have undermined confidence in the outcome of the VOP hearing. There was no overwhelming evidence presented by the state that would have made the errors described in this claim harmless.

EVIDENTIARY HEARING

An evidentiary hearing is necessary to settle the factual matters of petitioner's claims which the record does not sufficiently establish in the postconviction proceeding. Detective Biening's statement in his police report regarding his presence at the scene of the narcotics operation was a disputed matter which the record does not sufficiently determine whether the state or petitioner's arguments establish that Biening was present at the scene of the narcotics offense or not. Petitioner asserted points which were not conclusively refuted by the attached portions of the record presented by the state trial court in its denial of petitioner's claims.

First, in regard to Biening's prior statement in his police report, essentially, petitioner asserted that the fact that Biening's statement demonstrated that Biening 'lacked personal knowledge' of the events that occurred during the narcotics operation, was an indication that Biening was not present or involved in the narcotics operation.

The state contended in its argument of ground three of its initial response that, "the detective's testimony was not inconsistent with his report. If counsel had questioned him (detective Biening) about it, he likely would have just explained that the wording in his police report was 'imprecise'[7] but that he was present at the scene."

However, there's nothing in the record which supports the state's contention. In fact, petitioner's presentation of detective Biening's trial testimony supports his assertion of Biening's presence. As explained in ground one of this petition, Biening's trial testimony was attached as an exhibit to petitioner's objection to the state's initial response. Moreover, as demonstrated above, the record consisting of the State's contentions and the potions of the transcript of the VOP hearing, does not refute the material inconsistencies demonstrated in Biening's report and his VOP testimony.

The state trial court's determinations made without first, holding a hearing to afford both parties the opportunities of sufficiently establishing their positions, was unreasonable and lacking in justification.

The fact that the state trial court ruled in favor of the state's argument which lacked proof and failed to conclusively refute the facts of both of petitioner's claims, was an unreasonable application of Giglio and Strickland's standards.

Secondly, and evidentiary hearing is necessary so that the record could make sufficient clearance of whether or not detective Biening intended to place himself inside of the vehicle with the confidential informant at the motel when he testified that he was present with Jones and instructed her to direct petitioner to go to room 301.

It is fact that Biening's VOP testimony, as well as, sergeant Wentz and corporal Sciarrino's reports all were consistent in alleging that a phone call was place at the Pinellas County Sheriff's office, regarding the narcotics operation. However, that is not the issue in these matters.

The issue is demonstrated in the fact that during direct examination Biening was questioned regarding the phone call(s) that he heard and instructed Jones to make regarding the narcotics arrangement. Biening testified that he instructed Jones to call petitioner and instruct petitioner to go to room 301 to meet with her to sell her $50.00 worth of crack cocaine. Biening affirmed that he heard Jones 'parrot' those instructions into the phone she was using. Biening also testified that he was present with Jones at the motel when she placed the first call to petitioner.

---

[7] Note: This impreciseness is constituted as an inconsistency in the two statements.

As shown in ground one of this petition, Wentz and Sciarrino's reports were consistent in contradicting Biening's testimony by stating that Jones was inside a vehicle with three narcotics officers when she made such phone call in the narcotics operation.

This was the only evidence of exactly when such phone call was made and both documents were consistent in contradicting Biening's testimony alleged.

The fact that it is not clear from Biening's testimony of when such matters occurred on his behalf, a hearing is necessary so that the record could determine from Biening, exactly when did such matters take place.

At the evidentiary hearing, the record should determine if Biening intended to place himself inside the vehicle with the narcotics officers during the narcotics offense, which would remain contradicted or if Biening would not have placed himself inside the vehicle. The fact of Biening not being in the vehicle with Jones when he heard and instructed her to make such phone call, would have to surround circumstances that consists the surrounding evidence presented in these matters.

The state trial court's failure to make the record sufficient by making such findings before making its final determination of the facts was unreasonable.

Last, an evidentiary hearing is necessary to allow petitioner the opportunity to establish his claims stated grounds one and two above, using Biening's trial testimony and the SOP's. Where the state trial court acted unreasonably in failing to address the relevant evidence. A hearing would allow the record establish a full and thorough analization of the facts and evidence surrounding petitioner's constitutional claims for postconviction relief.

(b) If you did not exhaust your state remedies on Ground Two, explain why: N/A

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    [ ]    Yes    [X]    No

(2) If you did not raise this issue in your direct appeal, explain why: Claim was not cognizable on post conviction

**d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

[X]    Yes    [ ]    No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: 3.850 postconviction motion

Name and location of the court where the motion or petition was filed: Circuit Court Sixth Judicial Circuit, Pinellas County, Florida

Docket or case Number (if you know): CRC0823782CFANO; CRC0915140CFANO; CRC11250061CFANO

Date of the court's decision: March 5, 2013

Result (attach a copy of the court's opinion or order, if available): Denied, see attachment "B"

(3) Did you receive a hearing on your motion or petition?                    [ ] Yes  [X] No

(4) Did you appeal from the denial of your motion or petition?                          [X] Yes [ ] No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal     [X] Yes [ ] No

(6) If your answer to Question (d)(4) s "Yes," state:

Name and location of the court where the appeal was filed: Florida Second District Court of Appeal

Docket or case number (if you know): 2D15-1586

Date of court's decision: August 12, 2016

Result (attach a copy of the court's opinion or order, if available): per curiam affirmed, see attachment "C"

(7) If your answer to Question (d)(4) or Question (d)(5 is "No," explain why you did not raise this issue: N/A


(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your remedies on Ground Two: None

**GROUND THREE:** Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

N/A

(b) If you did not exhaust your state remedies on Ground Three, explain why: N/A

(c)      **Direct Appeal of Ground Three: N/A**

(1) If you appealed from the judgment of conviction, did you raise this issue?    [ ]      Yes      [ ]      No

(2) If you did not raise this issue in your direct appeal, explain why: Ineffective Assistance of Counsel is not usually addressed on direct appeal

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

[ ]      Yes      [ ]      No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Docket or case Number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                          [ ] Yes [ ] No

(4) Did you appeal from the denial of your motion or petition?                      [ ] Yes [ ] No

(5) If you answer to Question (d)(4) is "Yes," did you raise this issue in the appeal          [ ] Yes [ ] No

(6) If your answer to Question (d)(4) s "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(7)  If your answer to Question (d)(4) or Question (d)(5 is "No," explain why you did not raise this issue:

13.  Please answer these additional questions about the petition you are filing:

(a)  Have all grounds for relief that you have raised in this petition been presented to the highest state court have jurisdiction? [ ]     Yes     [X]     No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:  Grounds One and two have not been presented to the Florida Supreme Court because the Florida District Court of Appeal per curiam affirmed without an opinion.

(b)  Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reason(s) for not presenting them: Grounds one and two were presented in 3.850 postconviction motion and on appeal to the Florida Second District Court of Appeal.

14.  Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   [ ]     Yes     [X]     No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. N/A

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   [ ]     Yes     [x]     No

If "Yes," state the name and location of the court, the docket or case number, the type of proceedings, and the issues raised. N/A

16.  Give the name and address, if you know, of each attorney who represented you the following stages of the judgment you are challenging:

(a)  At preliminary hearing: Mary Obermyer, Assistant Public Defender.

(b)  At arraignment: Christie Pardo, Regional Counsel, 15500 Lightwave Dr., Clearwater, FL 33760.

(c)  At trial: Christie Pardo, Regional Counsel, 15500 Lightwave Dr., Clearwater, FL 33760.

(d)  At sentencing: Christie Pardo, Regional Counsel, 15500 Lightwave Dr., Clearwater, FL 33760.

(e)  On appeal: Megan Olsen, Public Defender, Polk County Courthouse, P.o. box 9000-pd, Bartow, FL 33831

(f)  In any post-conviction proceeding: Pro Se.

(g)  On appeal from any ruling against you in a post-conviction proceeding: Pro Se.

(h)  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    [X]    Yes    [ ]    No

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future: Circuit Court Sixth Judicial Circuit, Pinellas County, Florida

Give the date other sentence was imposed: June 11, 2013

(b)  Give the length of the other sentence: Life plus 15 years

(c)  Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    [X]    Yes    [ ]    No

17.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

The Petition is timely. See attachment "D" Timeliness of Petition

---

*    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)  A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

19

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: 1. The writ of habeas corpus; 2. Reverse and vacate the sentences under case No. CRC0823782CFANO; CRC0915140CFANO; and CRC11250061CFANO or; 3. Remand this cause for an evidentiary hearing to give petitioner an opportunity to set forth a complete and sufficient record for establishing his claims in grounds one and two which would afford the Habeas Court of making a more thorough analyzation of the facts and circumstances surrounding both claims. No evidentiary hearing was ever held in these matters.

Or any other relief to which petitioner may be entitled.

_Petitioner files Pro se_

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _Jan. 10, 2017_ (month, date, year).

Executed (signed on _Jan. 10, 2017_ (date).

_James Greene_

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. N/A

20

# ATTACHMENT "A"

## GROUND ONE

The trial court violated Greene's 6th and 14th U.S. Const. Amend. Rights and Fla. Const. Rights art. 1§ 2, 9, and 16 by its failure to conduct adequate Nelson[8] or Faretta[9] hearings for Greene's motion[s] requesting discharge of his court-appointed counsel.

## GROUND TWO

Convictions obtained through use of false testimony, known by the state to be false, is a denial of due process, and when the state though not soliciting false evidence, allows it to go uncorrected when it appears, is also denial of due process. U.S.C.A. Const. Amend. 14; and Fla. Const. Art 1 § 2 and 9; Giglio[10] violation.

## GROUND THREE

Counsel's failure to use available police report[s] to impeach officer's false testimony during cross-examination constituted ineffective assistance of counsel. U.S.C.A. Const. Amend. 6; Fla. Const. Art 1 § 2 and 9; Strickland v. Washington, 104 S.Ct. 2052, 466 U.S. 668 (1984).

## GROUND FOUR

Trial counsel's failure to effectively cross-examine state's witness sergeant Wentz using the favorable police reports to impeach homicide detective James Bienings false testimony, constituted a sufficient claim for

---

[8] Nelson v. State, 274 So,2d. 256 (Fla. 4th DCA 1973)

[9] Faretta v. California, 95 S.Ct. 2525 (1975)

[10] Giglio v. U.S., 92 S.Ct. 763 (U.S. 1972)

ineffective assistance of counsel. U.S.C.A. Const. Amend. 6; Fla. Const. Art 1 § 2 and 9, 16; Strickland v. Washington, 104 S.Ct. 2052, 466 U.S. 668 (1984).

## GROUND FIVE

Trial counsel's failure to investigate and subpoena favorable exculpatory witnesses, officer Walsh and Phelps, for an sufficient adversarial process was deficiency in her performance, rendering a sufficient claim for ineffective assistance of counsel. U.S.C.A. Const. Amend. 6; Fla. Const. Art 1 § 2 and 9, 16; Strickland v. Washington, 104 S.Ct. 2052, 466 U.S. 668 (1984).

## GROUND SIX

Trial counsel's failure to investigate and interview status witness C.I. Shunette Jones constituted a sufficient claim for ineffective assistance of counsel. U.S.C.A. Const. Amend. 6; Fla. Const. Art 1 § 2 and 9, 16; Strickland v. Washington, 104 S.Ct. 2052, 466 U.S. 668 (1984).

## GROUND SEVEN

Whether a cumulative error analysis is necessary for judging the trial counsel's multiple errors and defendant's claims of counsel's deficient performances where the defendant suffered prejudice as to counsel's multiple omissions made at his probation revocation proceeding. U.S.C.A. Const. Amend. 6; Fla. Const. Art 1 § 2 and 9, 16; Strickland v. Washington, 104 S.Ct. 2052, 466 U.S. 668 (1984).

22

# ATTACHMENT "B"

State v. Greene, CRC08-23782CFANO; CRC09-15140CFANO; CRC11-25061CFANO

      **ORDERED AND ADJUDGED** that Grounds Two, Three, Four, and Seven of the Defendant's Motion for Postconviction Relief are hereby **DENIED**.

      **DEFENDANT IS HEREBY NOTIFIED** that this is a final order and he has thirty (30) days from the date of this order to file an appeal, should he choose to do so.

      **DONE AND ORDERED** in Chambers in Clearwater, Pinellas County, Florida, this ____ day of March, 2015. A true and correct copy of this order has been furnished to the parties listed below.

                                                                     _____

                                                             Philip J. Federico, Circuit Judge

cc: Office of the State Attorney

James Alphonso Greene, DC# R60557
Hamilton Correctional Institution – Annex
10650 SW 46th Street
Jasper, FL 32052-1360

Original Signed

MAR 0 5 2015

PHILIP J. FEDERICO
Circuit Judge

24

# <u>ATTACHMENT "C"</u>

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES A. GREENE, DOC #R60557,    )
                                 )
            Appellant,           )
                                 )
v.                               )        Case No. 2D15-1586
                                 )
STATE OF FLORIDA,                )
                                 )
            Appellee.            )
_____)

Opinion filed August 12, 2016.

Appeal pursuant to Fla. R. App. P.
9.141(b)(2) from the Circuit Court for
Pinellas County; Philip J. Federico,
Judge.

James A. Greene, pro se.


PER CURIAM.

        Affirmed.


WALLACE, KHOUZAM, and SALARIO, JJ., Concur.

26

# ATTACHMENT "D"

# Timeliness of Petition

1. Judgment and sentence rendered on January 4, 2013 Case no.: CRC0823782CFANO; CRC0915140CFANO; CRC11250061CFANO. Notice of appeal filed on January 22, 2013. Eighteen days were charged against the one year statute of limitation contained in 28 U.S.C. §2244(d).

2. Appeal was affirmed on December 04, 2013 Second District Court of Appeal. Greene v. State, 139 So.3d. 368 (Fla. 2nd DCA 2013).

3. 3.850 motion filed in case CRC0823782CFANO; CRC0915140CFANO; CRC11250061CFANO on July 24, 2014. An additional 232 days were lost, for a total of 240 days.

4. "Amended" 3.850 filed on August 18, 2014

5. Denial of 3.850 rendered on March 5, 2015. Notice of appeal filed on around March 25, 2015, see attachment "E". 20 days were lost, for a total of 260 days

6. Appeal was affirmed on August 12, 2016, Attachment "C". Mandate issued on October 10, 2016

7. Petitioner now files the instant petition for writ of Habeas Corpus on January 10, 2017. An additional 92 days were lost, totaling 352 days.